**In re CHILD WORLD, INC., Debtor.**

**CHILD WORLD, INC., Plaintiff,**

v.

**SERVICE MERCHANDISE CO., INC., Defendant.**

**CHILD WORLD, INC., Plaintiff,**

v.

**SERVICE MERCHANDISE CO., INC. and Dixie Manor, Inc., Defendants.**

Bankruptcy No. 92–B–20887(JJC). Adv. Nos. 94–5082A, 94–5083A.

United States Bankruptcy Court, S.D. New York.

Nov. 2, 1994.

*Montrose,* 148 B.R. 234.

Thus, like *Macy's I, Montrose,* did not deal with the issue currently before the court.

**474**

Weil, Gotshal & Manges by Martin J. Bienenstock and Chris Wilson, New York City, for Child World, Inc.

McCarthy, Fingar, Donovan Drazen & Smith by William F. Macreery and Deborah Yurchuk McCarthy, White Plains, NY, for Service Merchandise Co., Inc.

**DECISION ON MOTIONS FOR SUMMARY JUDGMENT IN THE INSTANT PREFERENCE ACTIONS**

JOHN J. CONNELLY, Bankruptcy Judge.

Service Merchandise Company Inc. ("Service Merchandise") moves for summary judgment in two adversary proceedings commenced against it by the post-confirmation debtor, Child World, Inc. ("Child World"). In these adversary proceedings, Child World seeks to avoid as preferential two pre-petition rental payments made to Service Merchandise within 90 days of the filing of its Chapter 11 petition. At issue is whether a check for rent delivered prior to the due date under a lease but not honored until the week(s) after the due date constitute payments on account of antecedent debt.

## I.

The salient facts for purposes of this motion are not in dispute. On September 21, 1982, Child World entered into two subleases with Service Merchandise for premises located at 5025 Shelbyville Road in Louisville, Kentucky ("The Shelbyville Road Sublease") and for the premises located at the Dixie Manor Shopping Center, also in Louisville, Kentucky ("The Dixie Manor Sublease"). Under the Shelbyville Road Sublease, the term of which was for 16 years through August 1998, Child World was obligated to pay $19,928,75 to Service Merchandise on the first day of each calendar month. Under the Dixie Manor Sublease, the term of which was for 19 years through August 1992, Child World was obligated to pay $3,080.21 to Service Merchandise and an additional $8,969.56 to Dixie Manor, Inc., the original landlord also on the first day of each calendar month.

Towards the end of January 1992, Child World tendered two checks ("the Shelbyville Road Check") and the ("Dixie Manor Check") to Service Merchandise, both dated January 20, 1992, as payment for the upcoming month's rent.[1] The Shelbyville Road Check cleared Child World's account on Feb-

ruary 6, 1992 and the Dixie Manor Check cleared Child World's account on February 13, 1992. On May 6, 1992, Child World filed its Chapter 11 petition. Thereafter, on or about August 17, 1992, Service Merchandise filed a proof of claim in the amount of $370,385.63. Apparently, Child World objected to this claim and subsequently withdrew its objection, without prejudice, in order to bring the instant adversary proceeding.

On May 25, 1994, Child World commenced these adversary proceedings seeking to compel Service Merchandise to return the allegedly preferential transfers, or alternatively, to have its proof of claim expunged. Service Merchandise timely answered and subsequently brought this motion for summary judgment. In short, Service Merchandise contends that both payments are not preferences as a matter of law. Moreover, they invite me to declare that even if they are preferential, the transfers are excepted from avoidance as being substantially contemporaneous exchanges for new value or, alternatively, "ordinary course" payments.

Child World's response is surprisingly sparse of case support for the contention that the payments were preferential as a matter of law. It also fails to rebut the contentions that these payments are excepted from avoidance under 11 U.S.C. § 547(c). Notwithstanding, Child World asks me to grant its counter-motion for summary judgment.

## II.

A. *Summary Judgment Generally*

▮ Federal Rule of Civil Procedure 56(c), made applicable here by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477

---

1. A third check was tendered to Dixie Manor Inc., a defendant in the second adversary proceeding at about the time the checks were tendered to Service Merchandise. However Dixie Manor, Inc. and Child World have since settled and accordingly I have limited the factual recitation to those involving Service Merchandise.

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, courts must determine if there are any factual issues to be tried, while at the same time, resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The burden rests on the moving party to clearly establish the absence of a genuine issue as to any material fact. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The nonmoving party may oppose a summary judgment motion by making a showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### B. *11 U.S.C. § 547*

■ Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547(b), a debtor is permitted to recover, with certain exceptions, transfers of property that (1) are made to or for the benefit of a creditor, (2) are made on account of an antecedent debt, (3) are made while the debtor was insolvent, (4) are made within ninety days of the filing (or within 1 year of the filing if made to an insider) and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made. *Union Bank v. Wolas*, 502 U.S. 151, ——, 112 S.Ct. 527, 529–30, 116 L.Ed.2d 514 (1991). The debtor must prove each of the elements of the preference algorithm by a preponderance of the evidence. *Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365 (Bankr.S.D.N.Y.1986) If the debtor puts forth sufficient proof to establish a *prima facie* preference, the burden shifts and the creditor is given the opportunity to establish by a preponderance of the evidence that one of the enumerated exceptions in 11 U.S.C. § 547(c) applies. *See J.P. Fyfe, Inc. Of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 69–70 (3d Cir.1989); *In re Western World Funding Inc.*, 54 B.R. 470, 478 (Bankr.D.Nev.1985).

■ At least two policy goals are furthered by the Code's preference sections. First, 11 U.S.C. § 547(b) facilitates the prime bankruptcy policy of equality of distribution among creditors of the debtor. *Wolas*, 502 U.S. at ——, 112 S.Ct. at 533 (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977) 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6138). Distributive equality is preserved by requiring any debtor that received a greater payment than others of his class to disgorge so that all may share equally. *Id.* Avoiding preferences under 11 U.S.C. § 547(b) provides a mechanism through which disgorgement can be accomplished.

■ The second policy goal, which is rehabilitative in nature, is to "discourage a race by the creditor to collect payment while the debtor is still marginally solvent, or a race to the courthouse to force the debtor into bankruptcy." *Matter of CHG International, Inc.*, 897 F.2d 1479, 1483 (9th Cir.1990), *overruled on other grounds by, Wolas*, 502 U.S. at ——, 112 S.Ct. at 527. The rationale being that "were there no rule allowing avoidance of preferences, a creditor would have a strong incentive to hound the debtor with demands for collection or petition the debtor into involuntary bankruptcy immediately so that the debtor could not deplete his assets trying to keep afloat." *Id.* (citing House Report at 6329). *See Matter of Xonics Imaging Inc.*, 837 F.2d 763, 765 (7th Cir.1987).

■ Here, the parties have stipulated for purposes of this motion that four out of the five elements of the preference algorithm are satisfied. They differ however on the second element, that is, whether the rental payments were made on account of antecedent debt. The parties do not dispute the fact that the debt at issue was incurred on February 1, 1992. Indeed, it is well settled that the obligation to pay rent is deemed to arise on the due dates provided in the lease and not when the lease is signed. *Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631 (10th Cir.1986) (citing *In re Mindy's, Inc.*, 17 B.R. 177 (Bankr.S.D.Ohio 1982)); *In re Upstairs Gallery, Inc.*, 167 B.R. 915, 918 (9th Cir. BAP 1994) (citing *Coco.*, 67

B.R. at 370); accord M. Bienenstock, *Bankruptcy Reorganization* at 369 n. 59 (1987) (for ease of reference, *Bienenstock* at 369) (citing other cases).

The parties quarrel over which date I ought compare to the February 1, 1992 due date for the rental payments: the date Child World tendered the checks or the dates the checks were honored. Child World argues that the Supreme Court's decision in *Barnhill v. Johnson*, ─── U.S. ───, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) requires that I adopt a date of honor rule and therefore this date renders the transfers on account of antecedent debt. That argument is misguided.

■■■ At the outset, there is no question that "a debtor's monthly rent payment, if remitted on the day the monthly rent first becomes due and payable, is not a preference *because it is not made in respect of antecedent debt.*" *Bienenstock* at 369 (emphasis supplied); *See Upstairs,* 167 B.R. at 918 (citing *Coco,* 67 B.R. at 370 (citations omitted)); *cf. In re David Jones Builder Inc.,* 129 B.R. 682 (Bankr.S.D.Fla.1991) (interest payments made by check two and three days before the due date could not be payments on antecedent debt) This conclusion furthers both of the policies underlying 11 U.S.C. § 547(b). Distributive equality among creditors is maintained since rent payments "rest upon current consideration, i.e. a grant of possession for the rent period." *Upstairs,* 167 B.R. at 918 (citing *Coco,* 67 B.R. at 370). Similarly, insulating from subsequent attack timely made current rent payments (which for the most part are made by check) negates the incentive a landlord might

otherwise have to petition the debtor into bankruptcy.

I have no trouble reconciling a rule of law which employs a date of tender for purposes of evaluating whether a transfer was on account of antecedent debt to the rule of law enunciated in *Barnhill.* In *Barnhill,* the Supreme Court selected the date of honor rule rather than the date of tender for purposes of determining if a transfer occurred within the 90–day preference period. ─── U.S. at ───, 112 S.Ct. at 1387. I do not believe that *Barnhill* is binding here since that decision was purposefully tailored narrowly to the issue of the 90–day preference period, i.e. 11 U.S.C. § 547(b)(4) and not to all of 11 U.S.C. § 547. *See Id.* at ─── and ───, 112 S.Ct. at 1387–88 and 1391. To the extent that *Barnhill* drafted new boundaries, I believe the Supreme Court intended to create an island rather than a peninsula.[2]

■■■ But even if the unnecessarily broad language is not dicta, I still would find that the transfer were not on account of antecedent debt because the rental obligations were suspended until the checks cleared. *See Id.* at ───, 112 S.Ct. at 1389 (citations omitted) ("Receipt of a check for an underlying obligation suspends the obligation 'pro tanto until the instruments ... presentment ... discharge of the underlying obligor on the instrument also discharges him on the obligation.'") Since the path I choose is not outcome determinative in that I would find that the transfers were not on account of antecedent debt (albeit at an earlier or a later date), I prefer to hold that where payment precedes performance, such payment (even if by check) is not made on account of an antecedent debt.[3] *See Also Id.* at ───,

---

**2.** The policy considerations behind *Barnhill* differ from those underlying the other subsections of the preference statute. The Supreme Court conceded as much when it diverged from the consensus view of the Courts of Appeal that a date of tender rule applies under 11 U.S.C. § 547(c). *Barnhill,* ─── U.S. at ───, 112 S.Ct. at 1391 n. 9. A date of honor rule is understandable in the context of 11 U.S.C. § 547(b)(4) which is geared toward setting a cutoff date (which is in and of itself an arbitrary date) for the review of potentially preferential transfers. *Barnhill* offers a greater window for the trustee's review of transfers otherwise avoidable but for the arbitrary cutoff date and thereby furthers the goal of

distributive equality. The same benefits do not spring forth from adopting a date of honor rule under 11 U.S.C. § 547(b)(2); indeed, such a rule could potentially offer other creditors a windfall at the expense of the landlord. I do not believe that Congress (or the Supreme Court) would have intended such a result.

**3.** It goes without saying that the check must be presented for payment within the period deemed reasonable under the U.C.C. and honored upon presentment in order for the delivery date to be considered the time of transfer. *See White River,* 799 F.2d at 634 (citing *O'Neill v. Nestle Libbys P.R., Inc.,* 729 F.2d 35, 38 (1st Cir.1984)).

112 S.Ct. at 1392 (Stevens, dissenting) Accordingly, Child World has failed to establish that the two rental payments at issue are *prima facie* preferences.

Even were I to assume, *arguendo*, that Child World could have satisfied its burden, I am at a loss to understand why this action was commenced in the first place. ·See *Wolas*, 502 U.S. at ——, 112 S.Ct. at 534 (Scalia, concurring) There is no question that the transfers, even using the date of honor, qualify as contemporaneous exchanges of new value and that summary judgment is appropriate in favor of Service Merchandise under 11 U.S.C. § 547(c)(1). *See Coco*, 67 B.R. at 370. Similarly, I am inclined to believe (although I do not reach this issue) that Service Merchandise would ultimately prevail at a trial on whether the payments were ordinary course payments in the meaning of 11 U.S.C. § 547(c)(2).[4]

Accordingly, Service Merchandise's motions for summary judgment are granted. Service Merchandise is directed to settle an order consistent with this decision in each of the adversary proceedings and to include therein a provision closing the adversary proceedings.

---

**4.** Since there is no definition of an ordinary course transaction, courts are left to conduct what amounts to a "peculiarly" "factual inquiry" into "the business practices which were unique to particular parties under consideration." *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 486 (4th Cir.1992) (citing *Waldschwmidt v. Rani-er (In re Fulghum Constr. Corp.)*, 872 F.2d 739, 743 (6th Cir.1989) and *In re First Software Corp.*, 81 B.R. 211, 213 (Bankr.D.Mass.1988)) Given the necessity to conduct objective and subjective inquiries of the business relationship, unfortunately, this theory rarely, if ever, lends itself to a motion for summary judgment.