**In re ARTHA MANAGEMENT, INC., All–Z Const. Corp., Abram Gin, Alex Zaika, and related cases, Debtors.**

**John S. PEREIRA, Esq., a Chapter 11 Trustee of the Estates of 3204 Holland Owners Corp., 1055 Walton Avenue Associates and 546–52 West 146 Associates, Plaintiff,**

**v.**

**LEHIGH SAVINGS BANK, SLA and Lehigh Financial Corporation, Defendants.**

**Bankruptcy Nos. 90–B–10438 (BRL) to 90–B–10504 (BRL).**
**Adv. No. 92–8693A.**

United States Bankruptcy Court,
S.D. New York.

Nov. 18, 1994.

**674**

Salomon Green & Ostrow, P.C., Shmuel Vassar, New York City, for trustee.

Woehling & Freeman, Francine Chesler, Westfield, NJ, for Lehigh Financial Corp.

## MEMORANDUM DECISION

BURTON R. LIFLAND, Chief Judge.

The line of authority supporting the application of an expanded preference liability known, *inter alia*, as the *Deprizio* Doctrine has recently been precluded by legislative enactment. However, seeking to slip through a perceived open window in this jurisdiction, John S. Pereira, Chapter 11 Trustee (the "Trustee") of 3204 Holland Owners Corp. ("Holland") and 546–52 West 146 Associates ("546 Associates") (jointly referred to as the "Debtors") moves for summary judgment on an adversary proceeding to recover allegedly preferential payments made by the Debtors to Lehigh Savings Bank, SLA and Lehigh Financial Corporation (the "Bank") in the year prior to filing petitions in bankruptcy. The Bank moves for summary judgment dismissing the Trustee's action.

### Facts

The Debtors are two of several Artha Management partnerships formed for the purpose of investing in, holding and managing certain real property. The Debtors filed voluntary chapter 11 petitions on February 15, 1990. Holland's primary asset (the "Holland Property") was mortgaged to the Bank in return for a $2,300,000 loan. The mortgage is evidenced by a promissory note dated June 27, 1988. Holland's shareholders, Messrs. Gin, Zaika and Grathwohl, personally guaranteed the obligation. 546 Associates' primary asset (the "546 Property") was mortgaged to the Bank in return for a $1,700,000 loan. The mortgage is evidenced by a promissory note dated December 28, 1988. The general partners of 546 Associates, Messrs. Gin, Zaika and Grathwohl, personally guaranteed the obligation. In July of 1989, as a result of defaults under the notes, the parties entered into a re-instatement and/or extension agreement as to the notes and mortgages (the "Agreement").

The subject of the instant dispute involves payments the Debtors made to the Bank under the terms of the obligations. Although the Bank appears confused as to precisely which payments the Trustee seeks to avoid and recover, the Trustee has targeted the following payments: 1) Holland's payment to the Bank of $20,732.54 within ninety days of filing for bankruptcy; 2) Holland's payments to the Bank totalling $130,191.97 between one year and ninety days preceding the filing and 3) 546 Associates' payments to the Bank totalling $108,684.90 between one year and ninety days preceding the filing.

In December 1990, the Bank moved this court for relief from the automatic stay to allow foreclosure upon the Properties. The Trustee and the Bank agreed, in a stipulation and order submitted to the court (the "Lift–Stay Stipulation"), that encumbrances and liens against the properties exceeded their values and that the debtors had no equity in the properties. The Stipulation also set forth the Bank's waiver of claims against the Debtors. The Lift–Stay Stipulation was "so ordered" by this court. Shortly thereafter it was amended to clarify the Trustee's abandonment of and the Bank's exclusive control over the properties.

In July 1993 the Trustee brought an adversary proceeding against the Bank pursu-

ant to 11 U.S.C. 547(b) and 550(a) to avoid and recover the above mentioned transfers. The Bank's answer raised affirmative defenses including Accord and Satisfaction, estoppel, laches, res judicata, statute of limitations, failure to state a claim, and ordinary course of business. The Bank also raised counterclaims including recision of the Lift–Stay Stipulation for lack of consideration and a breach of duty by the Trustee. I note that the adversary proceeding also named Walton Avenue Associates ("Walton"), a related Artha Management debtor, as a defendant. A stipulation was entered into between the Trustee and Walton which this court approved. The stipulation settled the Trustee's preference complaint against Walton which amounted to $18,697. The Trustee accepted $7,500 in lieu of pursuing its complaint against Walton and made recognition of the risks of litigation, the "delicate factual" nature of insolvency and the viability of an ordinary course of business defense. *Application for Order Approving Settlement* at 4–5 (December 3, 1993).

On October 28, 1994 the Trustee filed the instant summary judgment motion seeking to avoid transfers amounting to $238,731.20. The Bank filed its motion for summary judgment on November 1, 1994 seeking to dismiss the trustee's complaint.

### Discussion

■ Summary judgment is appropriate when the Court determines that " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)); *see also Skouras v. United States,* 26 F.3d 13 (2d Cir.1994). "The moving party has the burden of demonstrating the absence of any genuine issue of material fact, but all inferences as to the underlying facts must be viewed in the light most favorable to the party opposing the motion." *In re Thomson McKinnon Sec. Inc.,* 132 B.R. 9, 11 (S.D.N.Y.1991) (citing *Celotex* 477 U.S. at

317, 106 S.Ct. at 2549); *see also Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The non-moving party may oppose a summary judgment motion by showing that there is a genuine issue as to a material fact in support of a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). A fact is material "if it might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, " '[t]he mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.' " *Ansam Assocs. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985) (quoting *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980)). As Rule 56(e) of the Federal Rules of Civil Procedure specifically states, a "party may not rest upon the mere allegations or denials of [an] adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." This party "must set forth 'concrete particulars'[,]" and bring to the Court's attention some affirmative indication that their version of relevant events is not a meritless allegation. *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978) (citation omitted). In determining whether to grant summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Where the movant is entitled to a judgment as a matter of law, a court should not be reluctant to grant summary judgment when a trial would serve no useful purpose. *See Knight,* 804 F.2d at 12.

■ The first issue this court must address is the Bank's defense that the Lift–Stay Stipulation was an accord and satisfaction of all outstanding matters between the parties including the instant preference action. An accord and satisfaction "is a form of contract whereby one party agrees to give or

perform, and the other party agrees to accept, what is offered in settlement of an outstanding claim." *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 724 (S.D.N.Y.1986); *Pepper's Steel & Alloys, Inc. v. Lissner Minerals & Metals, Inc.,* 494 F.Supp. 487, 496 (S.D.N.Y.1979). The Bank has the burden of proving this affirmative defense. *Stahl Management Corp. v. Conceptions Unlimited,* 554 F.Supp. 890, 893 (S.D.N.Y.1983).

■ The Bank specifically refers the court to the statement in the application submitted to the Court in support of the Lift–Stay Stipulation providing that the intent behind the parties agreement was "to conserve the assets of the estates, avoid unduly burdening this Court, and **otherwise resolve the outstanding issues as between the Trustee and [the Bank]**". I find this statement and the Stipulation as a whole to be insufficient to create an accord.

First, the statements in the Stipulation do not contain any offer by the Trustee to forgo pursuing preference actions. I noted on the record in a prior hearing[1] and in response to the Bank's assertion that the Lift–Stay Stipulation was a "global settlement" of all claims including preference actions, that ". . . lawyers usually in drafting look to those situations and include language that protects in that regard. Apparently there has been no such inclusion here." Additionally, in the Stipulation the Bank expressly waived certain claims against the Trustee but the Trustee did not waive any claims against the Bank. In light of the above, I find that there was no accord. Consequently, I need not "examine the circumstances surrounding the putative contract" to determine whether or not there was a meeting of the minds, as suggested by the Bank.

■ In addition to the absence of specific language prohibiting the Trustee from pursuing its' preference action, the procedural background supports a denial of this defense. A motion to lift the automatic stay is a contested matter under Fed.R.Bankr.Pro. 9014. A motion of this type is brought and decided in an expedited fashion. A court has

only 60 days in which to make a final ruling on such a motion which may only be extended on consent or by the court based upon compelling circumstances. *See* 11 U.S.C. § 362(e) as amended by the Bankruptcy Reform Act of 1994. Similarly, there is no requirement to bring compulsory counterclaims. *In re Hooker Investments, Inc.,* 131 B.R. 922, 930 (Bankr.S.D.N.Y.1991); *National Westminster Bank, U.S.A. v. Ross,* 130 B.R. 656, 670 (S.D.N.Y.1991). A preference action, on the other hand, is brought by way of an adversary proceeding pursuant to Fed. R.Bankr.Proc. 7001. The Trustee has an extended period in which to bring a preference action. *See* 11 U.S.C. § 546. For the foregoing reasons, I find that the Lift Stay Stipulation neither addressed nor concluded the claims now pending before this court. Moreover, because there is no requirement to plead preference actions at the time of a lift stay motion I find that the Trustee, even if he anticipated a preference action, violated no duty of disclosure to creditors.

Having found that the Lift–Stay Stipulation was not an Accord and Satisfaction of the instant action, I now address whether the transfers are avoidable preferences which are recoverable for the benefit of the estates. As to the transfers made between one year and ninety days preceding the filing of bankruptcy, the Trustee's Amended Complaint alleges payments to the Bank by Holland totalling $130,191.97 and by 546 Associates totalling $108,684.90, all which benefited insider guarantors. The bank seeks to dismiss these counts based upon the 1994 Bankruptcy Reform Act's rejection of the *Deprizio* case law. For the reasons set forth below, and except for one transfer of $20,732.45, I deny the Trustee's motion for summary judgment and grant the Bank's motion for summary judgment as it relates to these transfers.

■ A trustee is permitted to recover, with certain exceptions, transfers of the debtor's property which are proven, by a preponderance of the evidence, to be 1) made to or for the benefit of a creditor, 2) for or on account of an antecedent debt, 3) while the

---

1. July 13, 1993 Hearing Transcript on Trustee's Motion to Amend Complaint at 7.

debtor was insolvent, 4) within ninety days of the filing (or within one year of the filing if made to an insider), 5) which enable the creditor to receive more than it would otherwise receive in a Chapter 7 liquidation case. *See* 11 U.S.C. § 547(b); § 547(g); *In re Child World, Inc.*, 173 B.R. 473, 475 (Bankr. S.D.N.Y.1994); *In re Coco*, 67 B.R. 365, 368 (Bankr.S.D.N.Y.1986). A transfer which is proven avoidable under section 547(b) may be recovered from the initial transferee or the entity for whose benefit the transfer was made. 11 U.S.C. § 550(a). Here, the Trustee seeks to recover the above specified transfers from the Bank based on the legal theory set forth in *Levit v. Ingersoll Rand Financial Corp. (In re V.N. Deprizio Construction Co.)*, 874 F.2d 1186 (7th Cir.1989) (commonly referred to as *Deprizio* ).

In *Deprizio*, the 7th Circuit held that preferential transfers to an noninsider creditor which benefit insider guarantors by relieving them of their contingent liability to the creditor-transferee are recoverable from the noninsider creditor even if the transfers occurred between one year and 90 days of filing; i.e. the "insider preference period". The Bankruptcy Reform Act of 1994 was signed into law on October 22, 1994 and overrules *Deprizio* and its progeny. The Act amends section 550 so that an avoidable transfer to a noninsider lender, made in the extended preference period, is not recoverable from the lender notwithstanding that an insider guarantor may have benefitted. The legislative history that accompanied the bill made clear the congressional determination to *clarify* that non-insider transferees should not be subject to the preference provisions beyond the 90 day statutory period. Here it is undisputed that the Bank is not an insider.

I am aware that the Reform Act does not apply to the instant action because it was brought prior to the effective date of the Act. The Court of Appeals in this circuit has not had an opportunity to construe the *Deprizio* holding prior to the Reform Act Amendments. However, the majority of the lower court holdings in this circuit refuse to apply a recovery period beyond 90 days to non-insider transferees. *In re Rubin Bros. Footwear, Inc.*, 119 B.R. 416, 425 (S.D.N.Y.1990) (re-

jecting *Deprizio* as a policy matter because it is likely to impede the availability of credit to ailing businesses); *In re J.T.L. Supermarket Corp.*, 145 B.R. 3, 4 (Bankr.N.D.N.Y.1992) (the *Deprizio* holding "would have a chilling effect on the financial support given by lenders with respect to corporate loans guaranteed by insiders"); *In re Sprint Mortg. Bankers Corp.*, 164 B.R. 224 (Bankr. E.D.N.Y.1994); *But see In re Pine Springs Farm & Casino, Inc.*, 139 B.R. 90 (Bankr. N.D.N.Y.1992) (applying *Deprizio* ). Because I concur with the reasoning behind the clarifying amendment of section 550 I will not apply the holding of *Deprizio* to this case. Having found that the above transfers may not be recovered from the Bank as a matter of law, we need not address whether the Trustee established avoidability under section 547(b).

I now turn my attention to whether the single payment of $20,732.54 made by Holland to the Bank within 90 days of filing is avoidable and recoverable by the Trustee. The Bank moves for summary judgment dismissing this count because the Trustee has failed to establish the elements of section 547; specifically that the transfer was of the Debtor's property; on account of an antecedent debt; while the Debtor was insolvent enabling the Bank to receive more than in a Chapter 7 liquidation. For the reasons set forth below, I find that genuine issues of material fact exist with respect to the Debtor's insolvency on the date of the transfer and whether the transfer enabled the Bank to receive more than in a Chapter 7 liquidation.

The parties dispute whether the amount transferred was Holland's property. The Trustee's accountant sets forth, in an affidavit, the system employed by Artha Management for collecting and disbursing rents on behalf of its Debtors, including Holland. The Bank asserts, for the first time in its final responsive papers, that the affidavit submitted by the Trustee's accountant is insufficient to prove that the funds transferred were Holland's. The Bank argues that Artha Management commingled its funds such that the transfer could have been that of a different debtor's funds. I find the accoun-

tant's affidavit to be highly persuasive. Moreover, the Bank has previously admitted that it received this transfer from Holland. *Response to Admissions*, no. 16. Consequently, I find that the Trustee has established that a transfer of the Debtor's property occurred.

The Trustee has established and it is undisputed that the Bank was a creditor of the Debtor based upon a loan to Holland in the amount of $2,300,000.

■■■■ The Bank disputes that the transfer was made "for or on account of an antecedent debt". The Bank argues that the transfer was an interest payment and as such was "contemporaneous consideration" for the monthly use of borrowed principal. The Trustee asserts that the transfer was for interest due under the terms of the antecedent loan obligation. I find that, as a matter of law, this transfer was made on account of an antecedent debt. An antecedent debt is defined as a debt which is incurred prior to the relevant transfer. *In re Intercontinental Publications, Inc.*, 131 B.R. 544, 549 (Bankr. D.Conn.1991). On the date a debtor becomes obligated to make payments under a contract, it incurs a debt consisting of those payments. *Id.; In re Pan Trading Corp. S.A.*, 125 B.R. 869, 875 (Bankr.S.D.N.Y.1991) (A debt is incurred when the debtor first becomes legally obligated to pay). In this case, the loan agreement obligated the Debtor to pay principal and interest. While interest may have been payable monthly, the Debtor became legally obligated to pay all obligations under the note as of the date the loan agreement was entered into; a date prior to the transfer.

■■■■ The Bank also disputes that Holland was insolvent at the time the transfer was made. The Trustee argues that Holland is presumed insolvent within the ninety days preceding the filing of bankruptcy and that the Bank is judicially estopped from relying on a 1990 appraisal as evidence of the Debtor's solvency. The Trustee points to the 1991 Lift–Stay Stipulation in which the Bank conceded that Holland lacked equity in the property and that encumbrances and liens exceeded the property's value. Judicial estoppel protects the integrity of courts by precluding a party from assuming a position inconsistent with one previously asserted. *Hooker*, 131 B.R. at 931. The relevant time period for determining solvency under section 547(b)(3) is the time at which the transfer was made. I do not find that the Bank's assertions of value, made in the context of a 1991 Lift–Stay motion, preclude its assertions of value at the time of a transfer in December of 1989.

■■■■ Insolvency is defined under 11 U.S.C. § 101(32) as "a financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation ...". *In re Coated Sales, Inc.*, 144 B.R. 663, 666 (Bankr.S.D.N.Y.1992). A debtor is presumed insolvent in the 90 day period preceding the filing of a bankruptcy petition, 11 U.S.C. § 547(f), however a transferee may come forward with some evidence to rebut the presumption. *In re Mclean Industries, Inc.*, 132 B.R. 247, 257 (Bankr. S.D.N.Y.1991) *reversed on other grounds* 30 F.3d 385 (2d Cir.1994). Rebuttal evidence is that which is "sufficient to cast into doubt the statutory presumption of insolvency." *In re Candor Diamond*, 68 B.R. 588 (Bankr. S.D.N.Y.1986). The burden of ultimate persuasion remains on the party seeking to void the transfer. *Matter of Lucasa Intern., Ltd.*, 13 B.R. 596, 600 (Bankr.S.D.N.Y.1981). The rebuttable presumption is operative on a motion for summary judgment. *Matter of Lucasa Intern., Ltd.*, 14 B.R. 980, 982 (Bankr. S.D.N.Y.1981).

■■■■ The Bank's rebuttal evidence includes, *inter alia*, a March 1990 appraisal valuing the Holland property at $2,640,000 and the February 1990 Bankruptcy petition in which the President, in a Rule 52 Affidavit, states that liabilities exceed assets. The Bank also points to its books and the value at which it carried the property and to the fact that the Trustee is pursuing the sale of other assets and the investigation of other claims. While I find that the Trustee's briefing on the issue of fair valuation is thorough and convincing and that most of the Bank's rebuttal evidence is self-serving, I do not find, for purposes of Summary Judgment, that the Bank's rebuttal evidence is completely insuf-

ficient. The Bank, in relying upon the March 1990 appraisal and the Bankruptcy petition, has cast sufficient doubt on the statutory presumption. Proving valuation for purposes of insolvency at the time of a transfer is a fact-specific inquiry such that summary judgment on the issue is inappropriate.

 Finally, a Trustee must establish that the preferential transfer enabled the creditor to receive more than it would have in a chapter 7 liquidation. This requires a comparison of the payment received by the Bank with the distribution the Bank would have received under chapter 7 had the transfer not been made. *In re Rodriguez*, 50 B.R. 576, 582 (Bankr.E.D.N.Y.1985). This requires the construction of a hypothetical distribution of the estate. Because I find that the rebuttal evidence submitted by the Bank raises an issue as to insolvency at the time of the transfer, it is not clear whether or to what extent Holland is an unsecured creditor for purposes of a hypothetical distribution. Moreover, while the Trustee has set forth estimations of claims against Holland and cash available for distribution there may be contingent recoveries and claims still pending. See *Affidavit of John S. Pereira* at 2 (October 24, 1994). Consequently, I find that material issues of fact exist which prevent me from constructing the hypothetical distribution necessary to meet this element.

Having denied summary judgment on the major elements of avoidability of the $20,732.45 transfer there still remains for determination the ordinary course of business defense asserted by the Bank, the issue of insolvency on the date of the transfer and whether the transfer enabled the Bank to receive more than it would in a chapter 7 liquidation. These are fact specific issues which must be determined at a trial on the merits.

Submit an order consistent with the foregoing.