UNITED STATES COURT OF APPEALS
for the Fifth Circuit
No. 94-10774

IN THE MATTER OF:  SOUTHMARK CORPORATION,

SOUTHMARK CORPORATION,

                                        Plaintiff-Appellant,

VERSUS

D. VINSON MARLEY,

                                        Defendant-Appellee.
_____

Appeal from the United States District Court
for the Northern District of Texas
_____

ON PETITION FOR REHEARING

(Opinion June 26, 1995, 5th Cir., 1995, ____F.3d____)

(August 8, 1995)

Before LAY[1], DUHÉ, and DeMOSS, Circuit Judges.

DUHÉ, Circuit Judge:

    We deny Appellant's motion for rehearing, but we vacate our previous opinion, 55 F.3d 1071 (5th Cir. 1995), and substitute the following:

    Southmark Corporation, as debtor-in-possession, sought to recover its $400,000 prepetition payment to D. Vinson Marley in an adversary proceeding under Sections 547 and 548 of the Bankruptcy Code.  The bankruptcy court denied recovery after a bench trial. Southmark appealed only the court's ruling on the § 547 preference

_____

[1]  Circuit Judge, of the Eighth Circuit, sitting by designation.

action.  Utilizing clear error review, the district court affirmed. We affirm as well.

BACKGROUND

Southmark and Marley signed an employment contract in 1982 that required Southmark to pay severance benefits in the event it terminated the contract.  In 1986, Southmark transferred all its employees to North American Mortgage Investors, Inc. (NAMI), a wholly owned Southmark subsidiary, which in turn leased them back to Southmark.  On April 28, 1989, Southmark and Marley executed a settlement agreement, and Marley received a check for $400,000.  By signing the agreement, Marley released all Southmark severance obligations under the employment contract ($357,000) and agreed to provide consulting services to Southmark for ninety days hence ($43,000).  The check bore NAMI's name and was drawn on Southmark's Payroll Account.  The payor bank cleared the check on May 4, 1989.

Southmark filed for a Chapter 11 reorganization in bankruptcy on July 14, 1989, and asserted this action to recover the $400,000 payment to Marley.  In its preference cause of action, Southmark alleged that the $357,000 payment of severance benefits was a preference.  On cross motions for summary judgment, the bankruptcy court determined that Southmark had satisfied all the elements of a preference except for whether the funds transferred to Marley were property of the estate.  In a ruling from the bench after trial, the court denied the preference.  The court held that the transferred funds were not property of the estate because Southmark

2

failed to prove an interest in them. In addition, the court applied the earmarking doctrine to hold that NAMI's payment to Marley, to the extent that it released Southmark's liability to him, merely substituted one creditor for another. As an alternate holding, the court reconsidered its summary judgment ruling and held that the transfer was not a preference because it was not on account of an antecedent debt. Southmark contests the court's three rulings on appeal.

DISCUSSION

While this appeal was pending, we decided Southmark Corp. v. Grosz, 49 F.3d 1111 (5th Cir. 1995). Another Southmark preference action, Grosz considered whether a Southmark subsidiary's check drawn on Southmark's Payroll Account was property of Southmark's estate. We answered that question in the affirmative. Id. at 1119. Consequently, Southmark argues here that Grosz controls the property of the estate issue and requires reversal on that ground. We need not address Grosz or the bankruptcy court's application of the earmarking doctrine because we hold that the transfer was not made on account of an antecedent debt.

In its summary judgment ruling, the bankruptcy court held that Southmark established all the § 547(b) elements of a preference with the exception of the property of the estate issue. In its ruling after trial, however, the court changed its mind. It determined that Southmark's debt arose when it terminated Marley. Considering Marley's termination and the transfer to have been simultaneous, the bankruptcy court concluded that the transfer was

3

not "for or on account of an antecedent debt," which is an element of a preference.[2] The district court saw no error in the bankruptcy court's conclusion.

Southmark challenges the bankruptcy court's conclusion that the debt was not antecedent with three alternative arguments. First, Southmark contends that the debt arose in 1982 when Southmark and Marley executed the employment contract. Second, Southmark contends that it terminated Marley in mid-April 1989, not on April 28. Third, even if the termination occurred on April 28, Southmark argues that the transfer did not occur until May 4, when the drawee bank paid the check.

A debt is antecedent under § 547(b) if the debtor incurs it before making the alleged preferential transfer. In re Intercontinental Publications, 131 B.R. 544, 549 (Bankr. D. Conn. 1991); Tidwell v. AmSouth Bank (In re Cavalier Homes), 102 B.R. 878, 885 (Bankr. M.D. Ga. 1989); 4 Lawrence P. King, Collier on Bankruptcy ¶ 547.05 (15th ed. 1995). Our focus, therefore, is on the date the debt was incurred and the date the transfer occurred. The determinations of these dates involve mixed questions of law and fact, which we review de novo. See Barnhill v. Johnson, 112 S. Ct. 1386, 1389 (1992).

Southmark first contends that it incurred its debt when it and Marley signed the employment contract that called for payment of

---

[2] "[T]he trustee may avoid any transfer of an interest of the debtor in property . . . for or on account of an antecedent debt owed by the debtor before such transfer was made . . . ." 11 U.S.C. § 547(b)(2) (1988).

severance benefits in the event of termination.  The Code defines "debt" as "liability on a claim."  11 U.S.C. § 101(12) (1988).  A debtor incurs a debt when he becomes legally obligated to pay it.  In re Emerald Oil Co., 695 F.2d 833, 837 (5th Cir. 1983); see also Sherman v. First City Bank (In re United Sciences of Am.), 893 F.2d 720, 724 (5th Cir. 1990) (explaining, in setoff context, that bank incurred debt when right to payment arose, not when bank asserted right).

Under the Code, a party to an executory contract has a claim against the debtor only when the debtor has rejected the contract.  See 11 U.S.C. §§ 365(g), 502(g) (1988); Wainer v. A.J. Equities, 984 F.2d 679, 684-85 (5th Cir. 1993) (per curiam).  Consequently, a debtor who breaches an executory contract incurs a debt only at the time of breach.  See Wainer, 984 F.2d at 685.  Courts have reached the same conclusion in preference actions.  See In re Energy Coop., 832 F.2d 997, 1002 (7th Cir. 1987) (holding that purchaser incurred debt when it anticipatorily repudiated contract to buy crude oil); In re Gold Coast Seed Co., 751 F.2d 1118, 1119 (9th Cir. 1985) (holding that seed buyer became obligated to pay at time of shipment, not when parties executed contract for future shipment).

In Intercontinental Publications, the debtor terminated an employee whose employment contract provided for severance benefits payable in installments after termination.  The debtor brought a preference action, and the bankruptcy court considered whether the installment payments were on account of an antecedent debt.  The

5

court held that the debtor incurred its debt when the debtor terminated its employee. 131 B.R. at 550. Likewise, we conclude that Southmark incurred its debt to Marley at the time it terminated him.

The bankruptcy court found that Marley's termination occurred simultaneously with the execution of the settlement agreement. We review a bankruptcy court's factual findings for clear error, and we adhere strictly to that standard of review when the district court has affirmed those findings. In re Young, 995 F.2d 547, 548 (5th Cir. 1993). Southmark contends that Marley was terminated in mid-April 1989, before the parties executed the settlement agreement on April 28. As sole support of its contention, Southmark cites the deposition of its Chief Executive Officer, Arthur G. Weiss. Weiss's deposition testimony, however, does not support Southmark's contention; instead, Weiss explained that the settlement agreement provided payment to Marley in termination of the employment contract. The bankruptcy court's finding is not clearly erroneous.

Finally, Southmark contends, even if it incurred the debt on April 28, that the transfer occurred on May 4 when the bank paid on the check. Southmark cites Barnhill for the proposition that a transfer by check occurs, for purposes of § 547(b), on the date of honor, not the date of delivery. 112 S. Ct. at 1391. Because Barnhill makes the date of transfer later than the date Southmark incurred the debt, Southmark contends that the transfer was on account of an antecedent debt. We disagree.

6

State law governs the rights and duties of parties to a check transaction.  Id. at 1389.  Barnhill recognizes that the obligee's receipt of a check suspends the underlying obligation so long as the check is presented to the drawee bank within a reasonable time.  Id. (citing U.C.C. § 3-802(1)(b) (1991)); In re Child World, 173 B.R. 473, 477 & n.3 (Bankr. S.D.N.Y. 1994).  Consequently, if the debtor delivers a check before incurring a debt, the transfer is not made on account of an antecedent debt because the underlying obligation is suspended until the check clears.  Child World, 173 B.R. at 477.[3]

In this case, Marley received his check simultaneously with his termination.  His taking of the check suspended Southmark's simultaneous obligation to pay his severance benefits until the check was presented to the drawee bank.  When the transfer occurred at the time of honor, Southmark's simultaneous obligation was discharged.  The transfer, therefore, was on account of a simultaneous debt, not an antecedent debt.

## CONCLUSION

For the foregoing reasons, the district court's judgment affirming the bankruptcy court is AFFIRMED.

---

[3]  The issue in Barnhill was whether the check transfer came within the 90 day preference period of § 547(b)(4).  Because the date of honor rule allows the trustee to test more transfers as preferences, that rule furthers the bankruptcy goal of distributive equality among creditors.  Child World, 173 B.R. at 477 n.2.  In contrast, treating check payments of simultaneous debts as antecedent debt transfers potentially offers other creditors a windfall at the expense of the check holder because he has offered current consideration for the check.  Id. at 477 & n.2.