In re ROCOR INTERNATIONAL, INC., dba Rocor Transportation, fdba Consolidated Traffic Management Company, Debtor.

Rocin Liquidation Estate, successor in interest to Rocor International, Inc., debtor and debtor-in-possession, Plaintiff,

v.

Pan–American Life Insurance Company, Defendant.

Bankruptcy No. 02–17658WV.
Adversary No. 04–1270–WV.

United States Bankruptcy Court,
W.D. Oklahoma.

Feb. 17, 2006.

Nicholas A. Franke, Esq., David M. Brown, Esq., St. Louis, MO, for Plaintiff.

Pamela V. Hansen, Esq., New Orleans, LA, Joel A. Hall, Esq., Oklahoma City, OK, for Defendant.

## MEMORANDUM OPINION

T.M. WEAVER, Chief Judge.

In this preference action, the parties' cross-motions for summary judgment present the issue of when a payment made by check is deemed to have occurred for purposes of determining: (i) whether the payment was on account of an antecedent debt under § 547(b)(2) of the Bankruptcy Code [1] and (ii) whether the defense of contemporaneous exchange for new value under § 547(c)(1) may be applied. The plain-

---

[1] Unless otherwise specified, all references are to Title 11 of the United States Code (the "Code").

tiff, which seeks avoidance of the debtor's payment by check, asserts that the date the check was honored by the drawee bank should be deemed to be the date of payment. The defendant, the creditor to which the payment was made, maintains that the date the check was delivered should be deemed the payment date. For the reasons hereinafter stated, the court concludes that the date of delivery of the check should be deemed to be the date of transfer within the meaning of both §§ 547(b)(2) and 547(c)(1). Inasmuch as the defendant's obligation to pay arose simultaneously with the delivery of the check, the payment by check was not on account of an antecedent debt. Further, the payment constituted a contemporaneous exchange for new value. Therefore, the transfer may not be avoided as a preference.

Before it filed bankruptcy on August 5, 2002, Rocor International, Inc. (the "debtor", also referred to as "Rocor") submitted to Pan–American Life Insurance Company (the "defendant", also referred to as "Pan–American") an application for group health insurance benefits for the employees of Rocor. The signed application was dated, and submitted to Pan–American on, July 15, 2002. Accompanying the application was Rocor's check payable to the defendant in the amount of $67,610.66, representing payment for two months' premiums on the insurance coverage being sought. The plaintiff, Rocin Liquidation Estate (the "Estate"), successor to Rocor, brought this action seeking to avoid this payment as a preference under § 547.

After having considered the cross-motions and materials submitted by the parties, and their oral argument, the court concludes that summary judgment should be granted in favor of the defendant.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056. On a summary judgment motion, the court is required to pierce the pleadings and evaluate the actual proof to determine whether summary judgment is appropriate. *Id.* at Advisory Committee Notes. Where, as here, the parties file cross-motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties. See *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316 (10th Cir.1997) (citing *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690 (10th Cir.1981)).

## Undisputed Facts

The following material facts are undisputed:

1. On August 5, 2002 (the "Petition Date"), the debtors filed their voluntary chapter 7 bankruptcy petition.

2. On July 24, 2003, the bankruptcy court confirmed Debtor's First Amended Plan of Liquidation (the "Plan"). The Estate was created pursuant to the Plan and confirmation order, and all rights and causes of action previously held by the debtor vested in the Estate. The Estate thus has authority to pursue this and all other actions that could have been pursued by the debtor.

3. Pan–American is a mutual life insurance company organized under the laws of the state of Louisiana and authorized to do business in the state of Oklahoma.

4. Pan–American sells employee health benefit plan packages.

5. On July 15, 2002, Rocor submitted to Pan–American an application for a health benefits and insurance plan for Rocor's employees.

6. The application requested an effective date of June 1, 2002.

7. In connection with the application, Rocor submitted on July 15, 2002, a certain Adoption and Participation Agreement, by which Rocor requested to become a participating plan sponsor with respect to the requested insurance and that its employees who met certain eligibility classifications would be covered by the insurance.

8. Also in connection with the application, Rocor tendered to Pan–American its check dated July 15, 2002, for $67,610.66, representing payment of premiums due on the requested group insurance policy.

9. Pan–American approved the application, agreed to accept Rocor as a participating plan sponsor, accepted the premium payment, and agreed that the insurance coverage would be effective retroactively to June 1, 2002.

10. Upon accepting the application, Pan–American began providing to Rocor's employees the health and insurance benefits prescribed by the plan.

11. Pan American provided employee health and insurance benefits to Rocor's employees through November, 2002.

12. Rocor's check of $67,610.66, for the insurance premiums, was paid by the bank on which it was drawn on July 24, 2002.

13. On July 30, 2004, the Estate filed the Complaint to Avoid and Recover Preferential Transfers which commenced this adversary proceeding.

14. If there exist any items contained within the "Conclusions of Law and Discussion" section of this opinion that are more appropriately deemed factual findings, such items are incorporated herein by reference.

### Conclusions of Law and Discussion

■ Section 547 of the Code permits the trustee to recover certain payments made to creditors shortly prior to filing bankruptcy. The purpose of the § 547 avoidance statute is to place all unsecured creditors on an equal basis for purposes of distribution of the debtor's assets. *See Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190 (10th Cir.2002).

■ Section 547(b) permits avoidance of certain transfers of the debtor's interest in property.[2] Based on the statutory language, in order for a transfer to be subject to avoidance as a preference:

**2.** The language of the statute provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made
 (A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
§ 547(b).

(1) there must be a transfer of an interest of the debtor in property;

(2) on account of an antecedent debt;

(3) to or for the benefit of a creditor;

(4) made while the debtor was insolvent;

(5) made within 90 days before the date of the filing of the petition, if the creditor at the time of the transfer was not an insider; and,

(6) that left the creditor better off than it would have been if the transfer had not been made and the creditor had asserted its claim in a Chapter 7 liquidation.

*Id.* (citing *Jobin v. McKay (In re M & L Business Mach. Co., Inc.)*, 84 F.3d 1330, 1339 (10th Cir.1996)). The Estate bears the burden to prove the elements of avoidability under § 547(b). *In re Ogden*, 314 F.3d at 1196 (citing *Sender v. Johnson (In re Hedged–Investments Assocs., Inc.)*, 84 F.3d 1267, 1270 (10th Cir.1996)). All elements of § 547(b) must be proven before a transfer will be avoided. *Gillman v. Scientific Research Prods. Inc. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552 (10th Cir. 1995). The absence of any one of the elements constituting a voidable preference negates the Estate's claim. *Id.* at 554.

The defendant urges that the plaintiff cannot prove the antecedent debt element of § 547(b)(2), entitling the defendant to summary judgment. Not surprisingly, the plaintiff contests that assertion. The facts necessary to decide this issue are not disputed. The debtor submitted an insurance application on July 15, 2002, accompanied by the subject check for premiums, dated July 15, 2002. The check was honored, or paid, by the debtor's bank on July 24, 2002.

■ A debt is antecedent under § 547(b)(2) if the debtor incurs it before making the transfer alleged to be preferential. *Southmark Corp. v. Marley (In re Southmark Corp.)*, 62 F.3d 104, 106 (5th Cir.1995), (hereinafter "*Southmark*") (citing *In re Intercontinental Publications*, 131 B.R. 544, 549 (Bankr.D.Conn.1991); *Tidwell v. AmSouth Bank (In re Cavalier Homes)*, 102 B.R. 878, 885 (Bankr.M.D.Ga. 1989); 4 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 547.05 (15th ed.1995)). A debt is incurred when a debtor becomes legally obligated to pay it. *Nolden v. Van Dyke Seed Co. (In re Gold Coast Seed Co.)*, 751 F.2d 1118, 1119 (9th Cir.1985), (citing *Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833, 837 (5th Cir.1983); *Barash v. Public Finance Corp.*, 658 F.2d 504, 511 (7th Cir.1981)).

■ The plaintiff posits that Rocor's obligation to pay the insurance premiums arose before July 15, 2002—perhaps on July 9, when the policy may have been furnished to the debtor, or on June 1, when the coverage became effective retroactively, or even on an earlier date. However, these suppositions defy logic. Rocor could not have become legally obligated for premiums on insurance for which it had not yet applied. There being no dispute that the application was submitted on July 15, 2002, it must be concluded that the debt was not incurred on an earlier date. The case thus hinges on whether the transfer, or payment, was deemed to have been made on July 15, 2002, when the check was delivered, or nine days later, when the check cleared the drawee bank. If the former, the check was not paid on an antecedent debt; if the latter, it was.

■■ In check transactions, state law governs the relative rights and duties of the parties. *Southmark*, 62 F.3d at 107 (citing *Barnhill v. Johnson*, 503 U.S. 393, 397–98, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992)). "The receipt of a check for an underlying obligation suspends the obligation 'pro tanto until the instruments['s]

... presentment [;] ... discharge of the underlying obligor on the instrument also discharges him on the obligation.'" *Barnhill*, 503 U.S. at 398, 112 S.Ct. 1386 (citing § 3–802(1)(b), 2A U.L.A. 514 (1991), the Uniform Commercial Code provision in effect in New Mexico, where the case arose). The relevant U.C.C. provision in effect in Oklahoma at the time of the subject transaction provides:

> (b) Unless otherwise agreed and except as provided in subjection (a) ... [pertaining to certified, cashier's and teller's checks], if a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply:
>
>> (1) In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified. Payment or certification of the check results in discharge of the obligation to the extent of the amount of the check;
>> ...

Okla. Stat. tit. 12A, § 3–310.[3]

■■ Thus, under the above quoted statute, the giving of the premium check on July 15 caused the contemporaneously arising obligation to pay premiums to be held in abeyance until the check was either dishonored, paid or certified. The payment of the check by the bank resulted in the satisfaction, or discharge, of the suspended obligation. With the obligation having been suspended from the time of its creation until it was satisfied by payment, the obligation and the payment occurred simultaneously. Therefore, it seems clear that the payment, or transfer, was not made on account of an antecedent debt. See *Southmark*, 62 F.3d at 107 (citing *Child World, Inc. v. Service Merchandise Co., Inc. (In re Child World)*, 173 B.R. 473, 477, and n. 3 (Bankr.S.D.N.Y.1994)).

The plaintiff, however, submits that the court is bound to apply the ruling of *Barnhill*.[4] There, in affirming a decision of the Tenth Circuit, the Supreme Court held that, for purposes of determining whether a payment by check was made within the 90–day preference period of § 547(b)(4)(A), the payment was deemed to have been made when the check was honored by the bank, rather than when the check was delivered to the creditor. Of course, the legal issue decided by *Barnhill* is a different one than this court faces here. Yet, the Supreme Court rejected the appellants' reliance on legislative history indicating congressional intent that payment of a debt by check was equivalent to a cash payment unless the check was dishonored. The Supreme Court found that such reliance was not permitted because the statute was not ambiguous, although it recognized that the expressions of congressional intent were directed to § 547(c) and not to § 547(b). The Court reasoned that because a check is not an assignment of funds in the bank under the Uniform Commercial Code, it is not a transfer for the purpose of the 90–day preference period.

In *Southmark*, the Fifth Circuit had the opportunity to determine *Barnhill's* applicability to facts similar to those presented here. An employee of Southmark had signed a settlement agreement regarding severance benefits under an employment contract, and simultaneously he received

---

**3.** This statute broadens the scope of the former Okla. Stat. tit. 12A, § 3–802, to include cases in which notes as well as checks are given for an obligation.

**4.** 503 U.S. 393, 112 S.Ct. 1386 (parallel citations omitted).

Southmark's check for the benefits. The check cleared the drawee bank six days later. Relying on *Barnhill,* Southmark argued that the date of transfer was the date the check was honored by the bank and hence the payment was on account of an antecedent debt. Disagreeing, the circuit court found that, as *Barnhill* had recognized, the receipt of a check suspends the underlying obligation so long as the check was presented to the drawee bank within a reasonable time. Because the underlying obligation, which arose simultaneously with the delivery of the check, was suspended until the check cleared the bank, the transfer was not made on account of an antecedent debt. *Southmark,* 62 F.3d at 107 (citing *In re Child World,* 173 B.R. at 477 and n. 3). The court distinguished the issue before it from that in *Barnhill,* and the different policies involved:

> The issue in *Barnhill* was whether the check transfer came within the 90 day preference period of § 547(b)(4). Because the date of honor rule allows the trustee to test more transfers as preferences, that rule furthers the bankruptcy goal of distributive equality among creditors. In contrast, treating check payments of simultaneous debts as antecedent debt transfers potentially offers other creditors a windfall at the expense of the check holder because he has offered current consideration for the check.

*Southmark,* 62 F.3d at 107 (internal citations omitted).

The reasoning of *Southmark* is persuasive. The determination of the issue depends on the relative times of the incurring of the obligation to pay and the payment itself. It is clear under the U.C.C. that an obligation incurred simultaneously with the delivery of a check in payment is suspended until the check is paid, certified or dishonored by the bank.

If the check is paid or certified, the obligation is discharged, or ended. Thus, no time is deemed to have elapsed between the incurring of the obligation and the payment due to the statutory suspension of the obligation during the check clearing process. Further, if, and to the extent, policy factors should play a role in the decision, *Southmark* correctly concludes that applying a date of honor rule to facts like those present here might result in other creditors reaping a windfall at the expense of the creditor who made a contemporaneous payment by check. Additionally, it is this court's view that in common practice, a payment made by check is considered generally to have been made when the check is delivered, rather than when it is subsequently honored by the bank. Indeed, account creditors typically indicate in their records that a payment on the account is made on the date a check is received from the account debtor. For these reasons the court rules, as a matter of law, that the subject payment by check was not on account of an antecedent debt. Thus, the plaintiff has not met its burden of proving a necessary element of its preference claim.

If, however, contrary to the above ruling, the plaintiff should be deemed to have met its burden of proof, then the defendant's contemporaneous exchange defense must be addressed. For its defense, Pan-American relies on § 547(c)(1), which states:

> (c) The trustee may not avoid under this section a transfer—
>
> (1) to the extent that such transfer was—
>
> (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

For purposes of the various defenses under § 547(c), all decisions of the circuit courts of appeal, of which this court is aware, are unanimous in holding that the date of delivery rule applies to payments by check.[5] The Tenth Circuit has made such a ruling where an ordinary course of business defense under § 547(c)(2) was asserted. *Bernstein v. RJL Leasing (In re White River Corp.)* 799 F.2d 631 (10th Cir.1986).

Collier discusses the legislative history regarding payment by check and the contemporaneous exchange defense:

> The sparse legislative history of § 547(c)(1) shows that it was meant to prohibit exchanges of property that might be considered credit transactions when the transactions were contemporaneous transfers.

> Though strictly speaking, the transaction [payment by check] may be a credit transaction because the seller does not receive payment until the check has cleared through the drawee's bank, it is generally considered and intended to be a contemporaneous transaction, and assuming the check is promptly deposited and cleared, is in fact a substantially contemporaneous transaction.

5 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 547.05(4)(a) (15th ed.rev.2005), (internal citations omitted), (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 177, 373 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6137–38, 6329, and Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 VAND. L.REV. 713, 759–67 (1985)).

▮ For the reasons just discussed and those stated in the previous discussion concerning the antecedent debt element of the plaintiff's claim, the court concludes that the debtor's payment by check was contemporaneous with the provision of insurance by Pan–American. Thus, there was in fact a substantially contemporaneous exchange within the meaning of § 547(c)(1)(B).

The court further finds, based on the undisputed facts and reasonable inferences therefrom, that the payment of the insurance premiums by Rocor was given in exchange for the insurance coverage provided by Pan–American and that both parties intended the transaction to be a contemporaneous exchange for new value under § 547(c)(1)(A).

The plaintiff asserts however, that the defendant may not rely on the contemporaneous exchange defense because the alleged new value, the insurance coverage, was not for the direct benefit of the debtor, but rather for its employees. The plaintiff cites no authority for its view that the benefit must flow directly to the debtor. § 547(c)(1) does not specifically require a direct benefit. On this issue, the court finds instructive the teaching of *Jones Truck Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 130 F.3d 323 (8th Cir.1997). There, the Eighth Circuit held that the debtor received contemporaneous new value for the sums it expended in employee benefit plan payments in the form of the continued services provided by its employees in return. In the present case, it is reasonable to conclude that the providing of the employee benefit plan for Rocor's employees was beneficial to the employer-if nothing more than in having more satisfied employees who are more likely to remain in their jobs.

The court thus concludes that the defendant has established the elements of the

---

5. *Barnhill* made such an observation in discussing the § 547(b) and (c) dichotomy.

contemporaneous exchange defense under § 547(c)(1).

### Holding

For these reasons, the court adopts the "date of delivery" rule for purposes of determining whether (i) the subject payment by check was on account of an antecedent debt and (ii) the payment was a contemporaneous exchange for new value. Accordingly, the court finds that the subject payment is not an avoidable preference. The defendant's Motion for Summary Judgment is granted, and the plaintiff's Cross–Motion for Summary Judgment is denied.

The court will enter a judgment consistent with the foregoing.