In the Matter of RDM SPORTS GROUP, INC.; RDM Holdings, Inc.; Sports Group, Inc,; Diversified Products Corporation; Willow Hosiery Company, Inc.; Hutch Sports USA, Inc.; Diversified Trucking Corp.; International Sports and Fitness, Inc. and T.Q., Inc., Debtors.

William G. Hays, as Chapter 11 Trustee for Sports Group, Inc. and Diversified Trucking Corp., Plaintiff,

v.

Alabama Gas Corporation, Defendant.

Bankruptcy Nos. 9712788–WHD to 97–12796–WHD.
Adversary No. 98–1090.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

Sept. 21, 2000.

Stuart F. Clayton, Jr., Lamberth, Bonapfel, Cifelli & Stokes, P.A., Atlanta, GA, for Plaintiff.

Patrick Darby, Bradley Arant Rose & White, LLP, Birmingham, AL, for Defendant.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Before the Court in the above-referenced case is the motion for summary judgment filed by Defendant Alabama Gas Company (hereinafter "Alagasco") against Plaintiff William G. Hays, Jr. (hereinafter the "Trustee"). Also before the Court is the Trustee's motion for leave to amend complaint. Both motions arise in an adversary proceeding initiated by the Trustee under 11 U.S.C. §§ 547 and 549 to recover certain pre and post-petition transfers made by Sports Group, Inc. (hereinafter Sports Group) and Diversified Trucking Corp. to Alagasco.[1] These related matters form a core proceeding within the Court's subject matter jurisdiction, see 28 U.S.C. § 157(b)(2)(F), and they shall be disposed of in accordance with the reasoning which follows.

### BACKGROUND

Nine related companies filed petitions under Chapter 11 of the Bankruptcy Code on August 29, 1997. Prior to filing, Alagasco maintained an account for Diversified Products Corporation, one of the Debtors in the main bankruptcy proceeding (hereinafter "DPC"). Alagasco provided utility service to DPC's manufacturing facility in Opelika, Alabama.

On June 20, 1997, Alagasco received a check from "DP Fitness" in the amount of $72,848.50. Alagasco received a second check in the amount of $7,508.48 from "DP Fitness" on July 30, 1997.[2] Alagasco ap-

---

1. The motions presently before the Court relate only to the Trustee's cause of action under § 547 (Count One).

2. "DP Fitness" is not a named debtor in this case. DP Fitness, Inc., it appears, was an Alabama corporation formed in October 1996. (Sanders Aff. at ¶ 4). DP Fitness, Inc.

changed its name to Sports Group on December 19, 1996. (Id.). Sports Group is one of the nine entities in bankruptcy. No explanation has been offered by the Trustee as to why, if DP Fitness, Inc. changed its name in December 1996 to Sports Group, checks bearing the name "DP Fitness" were issued in

plied the check to DPC's utility account. On September 30, 1998, the Trustee, in his capacity as Chapter 11 trustee for Sports Group and Diversified Trucking Corp., filed a complaint against Alagasco to recover a portion of the two transfers ($60,-139.14) as preferential payments.[3] Alagasco contends that it is entitled to a judgment as a matter of law because the Trustee did not file the lawsuit in his capacity as Chapter 11 trustee for DPC. In response to Alagasco's summary judgment motion, and approximately eighteen months after the litigation was commenced, the Trustee filed a motion to amend his complaint. If allowed, the amended complaint will reflect that the Trustee is suing Alagasco as the representative of DPC's estate. The Court will dispose of both motions in this order.

## CONCLUSIONS OF LAW

### I. The Trustee's Motion to Amend

The Trustee seeks leave to amend his complaint to reflect that he is prosecuting this action in his capacity as Chapter 11 trustee of DPC's estate. On its face, such a request seems rather benign, especially since both the original complaint and the proposed amended complaint correctly identify the Trustee as the plaintiff in this matter. Alagasco takes the position that the proposed amendment does much more than simply change the identity of the particular entity with whom it transacted business. Instead, Alagasco argues that the proposed amendment contemplates a new preference claim asserted by a new party. Furthermore, Alagasco points out that the statute of limitations on a new preference action has expired. See 11 U.S.C. § 546. For these reasons, Alagasco submits that the Trustee's motion to amend should be denied.

Rule 15 of the Federal Rules of Civil Procedure, made applicable to bankruptcy

by Rule 7015 of the Federal Rules of Bankruptcy Procedure, governs amended pleadings. In pertinent part, the rule provides:

(a) A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

\* \* \* \* \* \*

(c) An amendment of a pleading relates back to the date of the original pleading when

\* \* \* \* \* \*

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading....

FED. R. CIV. P. 15(a) and (c). Inasmuch as the motion to amend was filed long after Alagasco answered, the Trustee cannot amend his complaint as a matter of course. Thus, the Court must grant leave before the Trustee can amend his complaint.

A trial court has considerable discretion when determining whether to grant leave to amend a complaint. *Jameson v. The Arrow Co.*, 75 F.3d 1528, 1534–35 (11th Cir.1996). Moreover, it has been said that the purpose of Rule 15(a) is to "assist the disposition of litigation on the merits of the case rather than have pleadings become ends in themselves." *Summit Office Park, Inc. v. United States Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir.1981)

June and July 1997. The Court can only assume that DP Fitness was a trade name of Sports Group.

**3.** The transfers in question total $80,357.98. The Trustee only seeks to recover the transfers net of new value provided by Alagasco.

(citations omitted); *see also Foman v. Davis,* 371 U.S. 178, 181–82, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (noting that the spirit of the procedural rules is merit-based decisions). According to the Supreme Court,

[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. The Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. at 181–82, 83 S.Ct. 227 (internal citations omitted). There is nothing in the record which suggests that the Trustee has acted in bad faith, has been dilatory, or has unnecessarily delayed this proceeding. That the proffered amendment comes approximately eighteen months after commencement of this litigation can be explained. The Trustee has advised the Court that Alagasco's debt was designated in the Debtors' records as an obligation of Sports Group.[4] (Hays Aff. at ¶ 8). Presumably, when the Trustee alleged in his original complaint that Sports Group made a preferential

transfer to Alagasco, he made that allegation based on information available to him at that time. For whatever reason, Alagasco made no mention in its answer that its creditor relationship was with DPC, and not with Sports Group. It appears that the Trustee did not become aware of Alagasco's contentions until late February 2000 when it asserted for the first time in discovery responses that it was owed money by DPC. Evidently, Alagasco acted for more than fifteen months on the information contained in the original complaint. The Trustee filed his motion for leave to amend approximately six weeks after receipt of the discovery responses. Under the circumstances, the Court will not prohibit the Trustee's amended complaint simply because many months have passed since the filing of the original complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir.1999) (amended complaint allowed since information to be added obtained during discovery and only added specificity to allegations already made); *Ward Elecs. Serv., Inc. v. First Commercial Bank,* 819 F.2d 496, 497 (4th Cir.1987) (plaintiff permitted to amend complaint to add new theory of recovery in part because proposed amendment based on information obtained during discovery; since information was in defendant's possession, it could not have been "prejudicially surprised").

It is the Court's view that Rule 15(c) is at the center of this controversy. Rule 15(c) sets forth the circumstances under which an amended complaint "relates back" to the original complaint. In essence, an amended complaint relates back if the claim asserted therein arose out of the same set of operative facts described in the original complaint. *See Moore v. Baker,* 989 F.2d 1129, 1131 (11th Cir.1993). Conversely, there can be no relation back if the new claim did not arise

---

4. It is worth noting that one of the primary reasons the Court appointed a Chapter 11 trustee for these cases is that the Debtors' records were in shambles. Thus, it would not surprise the Court to learn that the Debtors' information regarding Alagasco's debt was inaccurate.

out of the same conduct, transaction, or occurrence as originally pled. *Id.* Whether the Trustee's amended complaint, if allowed, relates back carries great significance. Absent a finding that the proposed amendment relates back to the original complaint, the cause of action set forth in the amended complaint would be barred by the statute of limitations.

As stated by the Eleventh Circuit, "the critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the claim now being asserted." *Id.* (citation omitted); *Williams v. United States*, 405 F.2d 234, 236–37 (5th Cir.1968); *Longbottom v. Swaby*, 397 F.2d 45, 48 (5th Cir. 1968) ("The purpose of the rule is accomplished if the initial complaint gives the defendant fair notice that litigation is arising out of a specific factual situation."). Alagasco contends that the Trustee's original complaint did not give it adequate notice that DPC's estate had a separate preference claim against it. Alagasco reasons that notice of a claim by one estate or debtor is not fair notice of a claim asserted by a separate estate or debtor, since claims and defenses in a preference action either stand or fall on the identity of the transacting parties. In support of its position, Alagasco directs the Court's attention to *Williams v. United States*, 405 F.2d 234 (5th Cir.1968), a case from the old Fifth Circuit which had its roots in Georgia.

In *Williams*, a minor injured by an explosion caused by the United States Army sued the federal government under the Federal Torts Claim Act. 405 F.2d at 235. The minor's mother was originally identified in the complaint as the plaintiff's "next friend." *Id.* Four years into the litigation, the mother moved to amend the complaint so as to appear as a separate party plaintiff with a new claim for a parent's loss of services. *Id.* at 235–36. The federal government objected to the proposed amendment, arguing that the mother was attempting to assert a new claim

which otherwise would have been barred by the statute of limitations. *Id.*

In its discussion, the Fifth Circuit recognized that relation back under Rule 15(c) is usually not appropriate if the plaintiff's proposed amendment sets forth a new cause of action which, if brought separately, would be time barred *Id.* at 237. However, the court held that new theories of recovery are permissible, provided (1) the original and amended complaint are based on the same transaction or occurrence and (2) the defendant was properly notified of the claim in the first complaint. *Id.; see also United States v. Johnson*, 288 F.2d 40, 42 (5th Cir.1961) (concluding that amended complaint related back although the plaintiff's legal theory completely changed from the first complaint; amended claim arose out of the same conduct or occurrence). For our purposes here, the most instructive language in *Williams* is recited below:

> In determining whether the adversary has had fair notice, the usual emphasis of "conduct, transaction or occurrence" is on the operational facts which give rise to a claim by the particular party based on any one or all of the theories conjured up, whether timely or belatedly. But when it comes to a late effort to introduce a new party, something else is added. **Not only must the adversary have had notice about the operational facts, but it must have had fair notice that a legal claim existed in and was in effect being asserted by, the party belatedly brought in.** This becomes of special importance in situations in which a common set of operational facts gives rise to distinct claims (or defenses) among distinct claimants (or defendants).

*Id.* at 238–39 (emphasis added). Ultimately, the *Williams* court accepted the mother's amended complaint and her new cause of action since the federal government was put on notice in the original complaint that she was asserting some type of claim. *Id.* at 239.

Application of the rule of law enunciated in *Williams* to the instant case leads the Court to conclude that Alagasco had "fair notice" that the Trustee was asserting a claim on behalf of DPC. The original complaint served to notify Alagasco that the Trustee, in a representative capacity, was seeking to recover the value of certain alleged preferential transfers. Therefore, since the inception of this lawsuit, Alagasco has known that the Trustee, and not a particular debtor, is its true adversary. Alagasco has acknowledged that it was the recipient of two transfers during the preference period. (Rushing Aff. at ¶ 3). Alagasco also admits that at the time of the subject transfers, DPC was indebted to it for natural gas utility service. (Id. at ¶ 4). There is no evidence that Alagasco maintained utility accounts for any other Debtor. Consequently, despite the Trustee's failure to commence this lawsuit in his capacity as Chapter 11 trustee for DPC, Alagasco knew or should have known that the pre-petition transfers it received form the heart and soul of this controversy. Moreover, since Alagasco applied the payments in question to DPC's outstanding account, it knew or should have known that the Trustee's recovery attempts were intended to benefit DPC's estate.

■ Underlying Alagasco's argument is the notion that the Trustee should not be granted leave to amend because he failed to provide "perfect notice." Without ques-

tion, the Trustee did not furnish "perfect notice" in his original complaint. "Fair notice," however, is all that is required, *see Williams*, 405 F.2d at 238–39; *Longbottom*, 397 F.2d at 48, and "fair notice" does not mean "perfect notice." In the Court's opinion, Alagasco had "fair notice" of the claims owned by DPC's estate.[5]

The Court will exercise its discretion and grant leave to permit the Trustee to amend his complaint to correct the capacity in which he sues. *See Longbottom*, 397 F.2d at 48 (commenting that a "[c]hange in description of the capacity of the plaintiff after the limitation period has expired has been allowed in a variety of situations"); *Nat'l Maritime Union of Am. v. Curran*, 87 F.Supp. 423, 426 (S.D.N.Y.1949); *Gibbs v. Emerson Elec. Mfg. Co.*, 31 F.Supp. 983, 984 (W.D.Mo.1940) (noting the general rule that a plaintiff may amend to change his or her capacity so long as the amendment does not create a new cause of action). Based on the above reasoning, the Trustee's complaint, as amended, will relate back to the original filing date. What prejudice Alagasco may suffer from having to defend the Trustee's amended complaint is outweighed by this Court's preference to resolve disputes on the merits. If Alagasco needs time to develop its defenses through the discovery process, the Court will gladly entertain a motion to reopen discovery.

---

5. As previously mentioned, the Trustee based his original complaint on information contained in the Debtors' books and records. If anything, the original complaint, insofar as the Trustee brought the action as Chapter 11 trustee for Sports Group, was based on misinformation. It is noteworthy that each Debtor, including DPC, is listed in the upper portion of the caption of the Trustee's original complaint. The caption also reflects that the cases are under joint administration. Given that Alagasco was on notice that DPC was in bankruptcy along with eight related entities, it would have been reasonable for Alagasco to assume that the Trustee did not intentionally misplead in the original complaint. To the extent the Trustee made a mistake in pleading, the Court will permit him to correct it.

*See Davis*, 371 U.S. at 181–82, 83 S.Ct. 227 ("the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome"); *Stevens v. Premier Cruises, Inc.*, 215 F.3d 1237, 1239 (11th Cir.2000) (before dismissing a complaint because of pleading defect, court should afford plaintiff the opportunity to cure the defect by amendment); *cf. Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir.1944) ("When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement.").

## II. Alagasco's Motion for Summary Judgment

### A. Summary Judgment Standard

In accordance with Rule 56 of the Federal Rules of Civil Procedure (applicable to bankruptcy pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure), the Court will grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Material facts" are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Furthermore, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Lastly, the moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir.1982).

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(e). Once the movant has made a *prima facie* showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a material issue of fact which precludes summary judgment. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Martin v. Commercial Union Ins. Co.*, 935 F.2d 235, 238 (11th Cir.1991). In the instant case, the Court will examine the record to determine whether Alagasco's motion provides a sufficient legal basis which would entitle it to a judgment as a matter of law. *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988); *Kelly v. United States,* 924 F.2d 355, 358 (1st Cir. 1991).

### B. Elements of a Preference

One of the fundamental tenets of bankruptcy law is the equality of distribution of a debtor's usually limited assets. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6138 (noting the "prime bankruptcy policy of equality of distribution among creditors"). In furtherance of that policy, § 547 of the Bankruptcy Code authorizes the post-petition recovery of a debtor's pre-petition transfers that are deemed to be preferential in nature. In essence, the central purpose of § 547 is to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy." *Id.* The elements of a preference are set forth in § 547(b), which provision permits a trustee to avoid any pre-petition transfer of an interest of a debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The burden of proving each of the above elements falls on the Trustee. *See Id.* at § 547(g).

Alagasco's summary judgment motion was predicated on the Trustee's original complaint, which contained no references to pre-petition payments made by DPC. Alagasco reasons that since it did not have a direct creditor relationship with the maker of the pre-petition payments, DP Fitness, the transfers could not have been "to or for the benefit of a creditor" or "on account of an antecedent debt owed by the debtor." *Id.* at § 547(b)(1) and (2). Given the Court's ruling on the Trustee's motion for leave to amend complaint and the fact that Alagasco has acknowledged its creditor relationship with DPC, the arguments that the transfers did not benefit a creditor and that they were not made in satisfaction of an antecedent debt are rejected.

 Alagasco also contends that even if DPC's estate is added as a party to this action, the Trustee still cannot prove a fundamental element of a preference, i.e., that DPC's property was transferred. *Id.* at § 547(b) (the trustee can only avoid a transfer of a debtor's interest in property). In this regard, Alagasco attributes great significance to DP Fitness' satisfaction of DPC's debt. Alagasco cites *Barber v. Riverside International Trucks, Inc. (In re Pearson Industries, Inc.),* 142 B.R. 831, 845 (Bankr.C.D.Ill.1992), for the proposition that when a debtor's obligation is paid by a related, but legally separate, entity which also happens to be in bankruptcy, there is no transfer subject to recovery under § 547. Generally speaking, a third party's payment of a debtor's obligation does not constitute a preferential transfer, as the debtor's estate does not suffer a loss in that situation. *See Matter of Erie Forge & Steel Corp.,* 456 F.2d 801, 806 n. 9 (3d Cir.1972); *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.),* 247 B.R. 463, 466, (8th Cir. BAP 2000).

 Notwithstanding the general rule with respect to third party payors, for purposes of § 547(b), the issue is whether DPC had an interest in the property transferred. In *Begier v. Internal Revenue Service,* 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990), the Supreme Court concluded that the "property" subject to avoidance under § 547(b) is "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Stated differently, a transfer is subject to avoidance if the transfer diminished the resources from which all of a debtor's creditors could have sought payment. *Southmark Corp. v. Grosz (Matter of Southmark Corp.),* 49 F.3d 1111, 1117 (5th Cir.1995); *Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.),* 16 F.3d 313, 316 (9th Cir.1994) ("the transfer must diminish directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one"); *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1355–56 (5th Cir.1986); *Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214, 1217 (9th Cir.1988). The Court is not convinced that DPC lacked an interest in the property transferred. In its confirmation order dated December 10, 1999, the Court concluded that, for all intents and purposes, the Debtors were operated as a single company. (Confirmation Order at 25). As the Court understands the Debtors' pre-petition financial affairs, Foothill Capital loaned money to the Debtors under a "single borrowing based certificate," and the funds were distributed to the various companies on as-needed basis. (Id.). The Court is under the impression that the money paid to Alagasco originated from a common fund comprised of loan proceeds from Foothill Capital. While Alagasco's reliance on *Pearson Industries* may be well-founded,

the parties have not adequately addressed, either factually or legally, the issue of whether DPC had an interest in the property transferred. Resolution of the preference issue will have to await further development, as the Court is not prepared to resolve the issue based on the present record.

### CONCLUSION

Having given this matter its careful consideration, the Court concludes that the Trustee's motion for leave to amend complaint should be, and hereby is, **GRANTED**. As for Alagasco's motion for summary judgment, the record needs to be developed regarding whether DPC had an interest in the property transferred. Accordingly, Alagasco's motion for summary judgment is **DENIED WITHOUT PREJUDICE**. Furthermore, Alagasco's request for oral argument is **DENIED**.

**IT IS SO ORDERED.**