[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-12462
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 3, 2009
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 07-02830-CV-TWT-1, 05-83622 BKC-MH

IN RE:   TANNER FAMILY, LLC,


Debtor.

_____


MIDWEST HOLDING #7, LLC,

                                                       Plaintiff-Appellant,

                              versus

PAUL H. ANDERSON, JR.,
Trustee,

                                                       Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia


_____

(February 3, 2009)

Before BIRCH and PRYOR, Circuit Judges, and STROM,* District Judge.

BIRCH, Circuit Judge:

Midwest Holding #7, LLC ("Midwest") appeals from the order of the district court affirming the bankruptcy court's denial of its motion for summary judgment and grant of summary judgment in favor of Appellee Paul H. Anderson ("Trustee"). Midwest argues that the bankruptcy and district courts erred in concluding that a lease termination payment made by Tanner Family, LLC ("Debtor") to Midwest was "for or on account of an antecedent debt" and thus avoidable as a preferential transfer under 11 U.S.C. § 547(b)(2). For the reasons that follow, we AFFIRM.

## I. BACKGROUND

The material facts in this case are not in dispute. In December 2002, Debtor and Midwest entered into a lease agreement whereby Debtor leased retail space from Midwest for a term of five years, the lease term to expire in March 2008. Pursuant to the lease, rent was due and payable on the first day of each calendar month. On 9 August 2005, Debtor and Midwest executed a Lease Termination Agreement whereby Debtor agreed to pay $87,172.50 in exchange for Midwest releasing Debtor from any further obligations under the lease. Debtor made the

---

* The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

2

payment on or after 2 August 2005 and vacated the premises at the end of August 2005. Within ninety days of making the payment, Debtor filed a petition for Chapter 11 bankruptcy and Trustee was appointed.[1] On 24 January 2007, Trustee brought an adversary proceeding in bankruptcy court in the Northern District of Georgia seeking to avoid and recover the $87,172.50 payment as a preferential transfer under 11 U.S.C. § 547(b). On cross-motions for summary judgment, the only issue before the bankruptcy court was whether the lease termination payment was made for or on account of an antecedent debt under § 547(b)(2). The bankruptcy court found that it was, and granted summary judgment in favor of Trustee. The district court affirmed, finding that Debtor's obligation to make future rental payments was a debt that was incurred on the date the parties entered into the lease agreement and thus was antecedent to the lease termination payment. It concluded that because payment of the $87,172.50 lease termination fee extinguished Debtor's preexisting debt under the lease, it was a transfer made "for or on account of an antecedent debt" within the meaning of § 547(b). See Midwest Holding #7, LLC v. Anderson, 387 B.R. 892, 895-96 (N.D. Ga. 2008). This appeal followed.

---

[1] Debtor's Chapter 11 petition was subsequently converted to a Chapter 7 proceeding on 27 July 2006.

## II. DISCUSSION

We review de novo the bankruptcy court's grant of summary judgment, applying the standards under Federal Rule of Civil Procedure 56, which permits summary judgment only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See In re Celotex Corp., 487 F.3d 1320, 1328 (11th Cir. 2007); Fed. R. Civ. P. 56(c). Whether Debtor's $87,172.50 transfer to Midwest was for or on account of an antecedent debt under § 547(b)(2) is a question of law that we review de novo. See In re A.W. & Associates, Inc., 136 F.3d 1439, 1441 (11th Cir. 1998) (per curiam); see also In re Morgan, 182 F.3d 775, 777 (11th Cir. 1999) (per curiam) (interpretation and application of Bankruptcy Code are questions of law subject to de novo review).

Section 547(b) of the Bankruptcy Code allows a bankruptcy trustee to "avoid any transfer of an interest of the debtor in property" that: (1) is "to or for the benefit of a creditor"; (2) is "for or on account of an antecedent debt owed by the debtor before such transfer was made"; (3) is "made while the debtor was insolvent"; (4) is made "on or within 90 days before the date of the filing of the petition"; and (5) "enables such creditor to receive more than such creditor would receive if the transfer had not been made." 11 U.S.C. § 547(b). The trustee must prove each element in order to show that a transfer is avoidable as a preference

4

under § 547(b).  See id. § 547(g); In re Flooring Am., Inc., 302 B.R. 394, 398 (Bankr. N.D. Ga. 2003).  The only dispute in this appeal is whether Trustee met his burden of proof as to the second element.

A debt is "antecedent" to the transfer sought to be avoided under § 547(b) if it is *pre-existing* or is incurred *before* the transfer.  See In re Bridge Information Sys., Inc., 474 F.3d 1063, 1066-67 (8th Cir. 2007); Matter of Cavalier Homes of Georgia, Inc., 102 B.R. 878, 886 (Bankr. M.D. Ga. 1989); In re Western World Funding, Inc., 54 B.R. 470, 476 (Bankr. D. Nev. 1985). Whether a debt is antecedent to the transfer at issue thus depends upon when the debt is incurred. See In re MarkAir, Inc., 240 B.R. 581, 590 (Bankr. D. Alaska 1999) ("'[W]hen the debt was incurred' is the central question under § 547(b)(2).").  Midwest contends that the debt created by a real estate lease is not incurred until it is "legally collectible," and rent is not legally collectible under Georgia law until the first day of the month when rent becomes due.  Trustee counters that Debtor's obligation to pay rent for the entire lease term was incurred on the date the parties entered into the lease agreement.  The central dispute in this appeal is therefore whether the debt created by the lease agreement was incurred periodically, as each rental payment became due, or at the time the lease was signed.

The Code does not expressly define when a debtor "incurs" a debt, however, the definitions of "debt" and "claim" are instructive. Under the Code, a "debt" is a "liability on a claim." 11 U.S.C. § 101(12). A "claim," in turn, is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Id. § 101(5)(A). By making the terms "debt" and "claim" coextensive, Congress has "adopt[ed] [ ] the broadest possible definition of 'debt.'" Penn. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558, 564, 110 S. Ct. 2126, 2130, 2133 (1990), superseded on other grounds by Criminal Victims Protection Act of 1990, Pub.L. No. 101-581, § 3, 104 Stat. 2865 (quotation marks and citation omitted); see also In re Chase & Sanborn Corp., 904 F.2d 588, 595 (11th Cir. 1990) ("It is established that 'debt' is to be given a broad and expansive reading for purposes of the Bankruptcy Code."). Accordingly, a debtor incurs a debt to a creditor when the creditor has a claim against the debtor, *even if the claim is unliquidated, unmatured, unfixed, or contingent.* See In re Flooring Am., 302 B.R. at 400; see also In re Mazzeo, 131 F.3d 295, 302 (2d Cir. 1997) ("[T]he term 'debt' is sufficiently broad to cover any possible obligation to make payment." (quotation marks and citation omitted)).

At the moment the lease was signed, Midwest had an unmatured claim against Debtor to receive monthly rental payments for the duration of the five-year term and, because a "debt" covers both contingent and unmatured claims or liabilities, Debtor had at that time a corresponding obligation to make those payments that equaled a debt. The fact that Debtor's liability matured only periodically as each month's rent became due and payable – or, as Midwest argues, that Debtor's obligation to pay rent was contingent upon the nonoccurrence of certain events, e.g., destruction of the premises or constructive conviction by the landlord – does not mean that the debt was not incurred upon execution of the lease. See In re Valles Mech. Indus., Inc., 20 B.R. 350, 352 (Bankr. N.D. Ga. 1982) ("'Incurred' does not necessarily imply 'due.'"). As the definitions of "debt" and "claim" make clear, a debt need not be matured before the date of the transfer in question in order for it to be antecedent to that transfer. See id. at 353 (fact that payment is not yet due does not mean obligation has not been created); see also In re First Jersey Securities, Inc., 180 F.3d 504, 511 (3d Cir. 1999) (debt incurred when right to payment arises, even if claim is not matured); In re Chase & Sanborn Corp., 904 F.2d at 595 (corporate debtor/guarantor's loan payments to creditor were on account of antecedent debt even though obligation to pay was contingent on guarantee's default and had not matured at time payments were

7

made); Matter of Cavalier Homes, 102 B.R. at 886 (debt arises when debtor borrows money or signs loan agreement "even though repayment may be postponed or contingent"); In re Western World Funding, 54 B.R. at 477 (creditor's waiving or postponing of debtor's obligation to pay "does not mean that the obligation has not previously been created, but merely that payment is not yet required").

We therefore hold that the debt in this case was incurred upon the signing of the lease and thus was antecedent to the $87,172.50 transfer. See Upstairs Gallery, Inc. v. Macklowe West Dev. Co., L.P., 167 B.R. 915, 917 (B.A.P. 9th Cir. 1994) (payment of lease termination fee was on account of antecedent debt under § 547(b)(2) because debt was incurred at time lease was signed). To conclude otherwise would be inconsistent with Congress's intent, made clear from the Code's broad definition of "debt," that "all legal obligations of the debtor, no matter how remote or contingent . . . be dealt with in the bankruptcy case." Matter of Cavalier Homes, 102 B.R. at 886.[1]

---

[1] In support of its argument that the debt in this case arose incrementally on the first of each month, and therefore was not antecedent to the termination payment, appellant relies on several bankruptcy cases from other circuits in which courts have held that debt pursuant to a real estate lease is incurred periodically on the due dates prescribed by the lease, and not on the date the lease is signed. See, e.g., In re White River Corp., 799 F.2d 631, 633 (10th Cir. 1986) (addressing when debt is incurred under § 547(c)(2)); In re Child World, Inc., 173 B.R. 473, 476 (Bankr. S.D.N.Y. 1994) (relying on In re White River Corp. for proposition that debt is incurred under § 547(b)(2) when rent is due and not when lease is signed); In re Mindy's, Inc., 17 B.R. 177, 179 (Bankr. S.D. Ohio 1982) (debt not incurred when lease was signed because "[t]he total

## III. CONCLUSION

Midwest appeals the district court's order affirming the bankruptcy court's grant of summary judgment in favor of Trustee. We conclude that Debtor's debt was incurred at the time the lease was executed in 2002. Inasmuch as the 2005 termination payment discharged Debtor's obligations arising under the lease agreement, it constituted a transfer "for or on account of an antecedent debt." Accordingly, the bankruptcy and district courts did not err as a matter of law in determining that the transfer was avoidable under § 547(b).

**AFFIRMED.**

---

lease obligation, at that point in time, was not due and payable"). Even if these cases were binding on this court, and they are not, the general rule they articulate is nevertheless inapplicable because it is premised upon the reasoning that, in exchange for rental payments made pursuant to a lease obligation, the lessee continues to possess, or to have an interest in, the leasehold estate. While the debt at issue in this case also arose under a real estate lease agreement, Debtor relinquished any interest in future possession of the leasehold estate when it paid the termination fee. See Upstairs Gallery, 167 B.R. at 918 (general rule that lease obligations are incurred on a monthly basis as rent becomes due and not when lease is signed did not apply where trustee sought to recover lease termination payment because such payment "was not a quid pro quo for concurrent possession"). Accordingly, appellant's contention that these cases should compel the result in this appeal is without merit.